## GRIBBLE et al. v. DITTO.
### No. 261.

Circuit Court of Appeals, Second Circuit.
April 28, 1941.

Edward G. Bathon, of New York City, for appellants.

Ralph E. Marson, of New York City, for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal from a judgment dismissing an amended complaint for insufficiency in law. It was filed as a class suit on behalf of all others similarly situated, by four citizens of Ohio against a citizen of New York. The facts alleged were as follows. One Russell, who had invented a process for making "a mulsified compound, including hydro-carbon," assigned all his interest to a Delaware corporation on February 18, 1930, and the corporation in exchange granted him, on April 10, 1930, "an irrevocable license to use the invention * * * in connection with locomotives and steamships." From time to time thereafter Russell executed to a number of persons—the plaintiffs among them—separate "certificates of interest," as follows: "I the said, Robert H. Russell have sold, assigned and transferred unto the said, (a) A sum of money equal to      Percent. of such income or royalty as may be paid to me for, or resulting from the exploitation of such license or right or, (b) A sum of money equal to      Percent. of the proceeds of the sale of such license or right, if and when such license or right is sold." The patent issued on November 3, 1936, to Russell who, on April 7, 1937, executed a contract to four persons in Ohio, whom we may call collectively "The Four," giving them an option for a year to purchase "the sole and exclusive rights * * * to exploit * * * manufacture, and sell * * * and otherwise deal in" the patented process, and to buy all machinery and materials used in connection with Russell's business. On April 19, 1937, Russell transferred to the defendant, who had notice of "The Four's" option, all Russell's interest in the license; and three days thereafter—on April 22, 1937—by a "Bill of Sale" he transferred to "The Four" his "sole and exclusive rights * * * to exploit * * * manufacture * * * and otherwise deal in" the process. On May 11, 1938, "The Four" executed a declaration of trust by which they did "acknowledge, certify and declare that said rights * * * conveyed by said Robert H. Russell" to them "by said Bill of Sale were so bargained, sold and conveyed to them in trust as hereinafter stated and that all of said rights, interests, privileges and property acquired under said Bill of Sale were acquired in trust and are now held in trust for the use and benefit" of those who held the certificates of interest in the royalties and income above mentioned. The complaint prayed that the defendant be directed to surrender the original of the assignment from Russell to him, and for such other relief as might be proper. The original complaint spoke of "The Four" as "acting for the benefit of and as trustees for the plaintiffs and all other holders of certificates of interest"; and the judge dismissed the suit because it did not allege that the plaintiffs had asked "The Four" to proceed against the defendant and that they had refused. The amended complaint changed the descriptive phrase we have just quoted by speaking of "The Four" not as "trustees," but "as agents and nominees for and on behalf of the plaintiffs" and the other certificate holders. The defendant made the same objection to this complaint as he had to the first, and a second judge decided that the amendment was immaterial and dismissed the action finally. The plaintiffs now raise three points: (1) that the complaint must be read according to its allegations which no longer describe "The Four" as trustees, but as agents; (2) that there was no res to which the declaration of trust could attach; (3) that the trust was "passive" or "dry" under the Statute of Uses and Trusts so as to pass title direct to the certificate holders as a class.

Since the patent issued to Russell in spite of his earlier recorded assignment of the invention to the Delaware corporation, it was probably issued in the usual form to Russell, "as assignor" to the Delaware corporation. Be that as it may, we are to suppose that the legal title vested in the company, and that Russell's license was limited to a use, and a limited use, which was merely a contract by the patentee not to invoke its monopoly against Russell if he "used" the process on "locomotives and steamships." The certificates were in turn nothing but agreements to give a holder his prescribed proportion of any royalties which Russell might receive; they created no interest in the license. The option to "The Four" was a contract to assign the license to them, which they could have specifically enforced. Next was

the assignment of the license to the defendant; then the assignment to "The Four"; and finally their declaration of trust. The result of all this was that the defendant intentionally coöperated with Russell to defeat the performance of the option; which was an actionable tort upon which equity will raise a constructive trust in the license. Restatement of Restitution § 168 (1) Comment b. This was the situation as alleged in the original complaint; and, since "The Four" were described as express trustees of the option it was right to decide that they alone could be plaintiffs unless they wrongfully refused to act.

The case turns upon whether it makes any difference that the amended complaint alleged that "The Four" received the option and the "Bill of Sale" as "agents and nominees" of the certificate holders. When "The Four" got the option, if Russell knew them to be agents for disclosed principals and contracted with them as such, the certificate holders became the actual obligees, in which event obviously they need not have made demand upon their agents if they wished to sue Russell on the contract. If on the other hand "The Four" were agents for undisclosed principals, although they could have themselves sued Russell on the contract, so could the certificate holders. This was not indeed an action upon the contract, but, as we have said, to impress a constructive trust upon the license in the defendant's hands because of his joining with Russell in defeating performance. Obviously that can make no difference, if "The Four" were agents of disclosed principals. With equal certainty it cannot, if the certificate holders were undisclosed principals, because since they could sue Russell upon the contract in their own names, they must be able to sue the defendant in their own names for making performance impossible. We have indeed found nothing on the point but it seems clear in principle.

This result is not affected by "The Four's" declaration of trust. Whatever doubt that—like the allegation in the original complaint—may throw upon the truth of the allegation that they took as agents, we must accept it as it reads. If so, they had no power to affect the interest of their principals—disclosed or undisclosed—by a declaration of trust unless the principals joined in it, which the complaint does not allege. Hence it follows, giving the pleading the benefit of Rule 8 (f),

Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, that the plaintiffs had a direct right of action against the defendant which did not need the concurrence of "The Four."

Judgment reversed.